Lori K. Serratelli, Esquire
Attorney ID No. 27426
SCHIFFMAN SHERIDAN & BROWN, PC
2080 Linglestown Road, Suite 201
Harrisburg, PA  17110
717-540-9170
717-540-5481 Facsimilie
lserratelli@ssbc-law.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dawn Hayes,<br>     Plaintiff | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO. |
| | : | |
| Mifflin County School District,<br>     Defendant | : | |
| | : | Jury Trial Demanded |

**COMPLAINT**

## I.    INTRODUCTION

Plaintiff, Dawn Hayes, a resident of Mifflin County, Pennsylvania, by and

through her attorneys, Schiffman, Sheridan & Brown, P.C., brings this action for

equitable, monetary and other relief to redress intentional violations by

Defendant, Mifflin County School District of rights secured by the laws of the United States and the statutory law of the Commonwealth of Pennsylvania.

## II.    **JURISDICTION**

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. Sec. 2000e, et. seq. pursuant to 28 U.S.C. Sec. 1331, and the Pennsylvania Human Relations Act ("PHRA"), 42 P.S. Sec. 951, et. seq.

2.    Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation with the Pennsylvania Human Relations Commission ("PHRC") at Docket No. 201500115 on December 2, 2015 which was cross-filed with the EEOC.  Hayes alleged, *inter alia*, that she was retaliated against because she engaged in activity protected under Title VII and the PHRA. (Attachment "A")

3.    The PHRC served the charge on Defendant on January 27, 2016.

4.    On November 2, 2016, Plaintiff filed an additional Questionnaire with the PHRC alleging further retaliation, asking that it be docketed as a second complaint.  The Questionnaire was docketed at Docket No. 201602095.

5.    On June 30, 2017, the PHRC confirmed it had received the Questionnaire on November 2, 2017 but then indicated it was not accepting it

because it was "clearly not within the jurisdiction of the PHRC", despite the fact the initial sex discrimination and retaliation charge docketed at #201500115 had been accepted and languished in the investigative stage for over two years through the turnover of multiple investigators.

6.    Hayes requested a Right to Sue letter from the EEOC on her initial charge docketed with the PHRC and received the Right to Sue letter from the Department of Justice on May 4, 2018. (Attachment "B")

III.    **VENUE**

7.    All actions complained of herein took place within the jurisdiction of the United Stated Court for the Middle District of Pennsylvania as the place in which the claims arose and the place where Defendant conducts business.

8.    Venue is proper in the Middle District pursuant to the dictates of 28 U.S.C. Sec. 1391(b), (c) and (d) and 42 U.S.C. Sec. 2000e-5(f)

IV.    **PARTIES**

9.    Plaintiff Dawn Hayes ("Hayes") is an adult individual residing at 2994 Front Mountain Road, Belleville, Mifflin County, Pennsylvania 17004.

10.    Defendant, Mifflin County School District ("MCSD") is a governmental entity with its principal offices located at 201 8th Street, Lewistown, Pennsylvania 17044.

11.     Defendant employed Hayes from November 2003 until she was constructively discharged on or about June 30, 2016.

12.     During the period of Hayes' employment, MCSD was a "person" as defined within the meaning of 42 U.S.C. Sec. 2000e(a) and was an "employer" as defined within the meaning of 42 U.S.C. Sec. 2000e(b).

## V.     STATEMENT OF FACTS

### Background

13.     Hayes holds two Masters in Educational Leadership and Education Development and Strategies, both from Wilkes College and was awarded her doctorate in Educational Leadership and Literacy from the University of Pennsylvania in December 2017.

14.     Hayes was hired by MCSD in November 2003 as a Reading Specialist.

15.     In 2012, Hayes applied for and was promoted to the position of Director of Federal Programs whereby she was responsible for supervision of reading, mathematics, and literacy coaching staff; management of competitive and formula grants; and all other duties as assigned.

16.     Hayes reported directly to the Superintendent, James Estep.

17.     As Director of Federal Programs, Hayes worked with other directors including but not limited to Steven Schaaf ("Schaaf"), Director of Elementary

Education, Vance Varner, Director of Secondary Education, ("Varner") and Tracy Jones ("Jones"), Director of Special Education.

18.    Michelle Schaaf, the spouse of Director Schaaf was also employed by MCSD in the position of Mifflin County On-line Education and was supervised by Hayes.

## Complaints

19.    In June 2014, Hayes followed the MCSD policy regarding complaints of discrimination and harassment by meeting with the Human Resource Director, Kathy McCool ("McCool") to lodge a complaint about the way in which Director Schaaf was treating her in a demeaning and harassing manner, compared to her male counterpart, Varner, Director of Secondary Education, because of her gender.

20.    In September 2014, after having complained to Superintendent Estep with no results, Hayes made complaints to McCool of sexual harassment and complaints of bullying and intimidation by Schaaf.  Hayes complained that Schaaf posted photographs of his wife, Michelle Schaaf, posed in a bikini in his office which were not acceptable for the work environment and made Hayes uncomfortable.  Further, Schaaf made derogatory and demeaning comments about Jones based on her gender and sexual orientation.  Schaaf screamed at

Hayes because she disagreed with his wife regarding a literacy coach which compromised Hayes' ability to supervise Michelle Schaaf.

21.    MCSD policy with respect to Administrative Employees prohibits discrimination and harassment based on sexual orientation.

22.    In October of 2014, Hayes met again with McCool to inquire what was being done about her complaint.  McCool advised Hayes she had spoken with Estep who was taking action and Schaaf would be apologizing.

23.    In November 2014, Hayes met with McCool and informed her that since Hayes complained about Schaaf to McCool in June 2014 that Schaaf would not interact with her at all professionally.  Interaction was necessary for her to complete her work assignments.  Hayes was being excluded from meetings with elementary principals and notes and agendas of the meetings were either not being recorded, retained or shared with Hayes.

24.    At the November 2014 meeting between Hayes and McCool, McCool advised Hayes that Schaaf was acting the way he did "because he is a man", implying that excused his behavior.

25.    In December 2014, Hayes met again with McCool to inform her that she had been able to work in the past with Schaaf but since she lodged her complaints, Schaaf was clearly treating her differently.

26.     Hayes advised McCool that she was proactively meeting with Varner and Jones each week since Estep was not available and was not holding Central Office meetings where information could be shared.  She was also making her rounds to each elementary principal to help them with the schoolwide plans, planning for instruction, and to assist with supervision using PA ETEP which is the Pennsylvania on-line platform to perform teacher evaluations.

27.     On or about January 15, 2015, the situation had become progressively worse.  Hayes met directly with Superintendent Estep to advise him that Schaaf would not respond to her emails or work with her on her assigned tasks.  Hayes explained that Schaaf's refusal to work with her and his name calling made the situation untenable for her.   Hayes reviewed everything she was doing to keep Schaaf informed of her works, i.e.  Estep commented that Hayes should "watch out" for Schaaf and that he himself "could not fix this place".

28.     Hayes advised Estep that Schaaf was publicly making derogatory comments about her instructional initiatives such as literacy coaching and training for teachers which was tainting her reputation among her colleagues at the school district.

29.    Hayes advised Estep that Schaaf began holding language arts curriculum meetings in September 2014, usurping Hayes' position as language arts coordinator.

30.    Estep advised Hayes that Jones had filed a complaint against Schaaf and the MCSD.

31.    After Hayes was interviewed by counsel for MCSD regarding the Jones complaint, Hayes performance was suddenly questioned by Estep.

32.    On or about January 28, 2015, Estep informed Hayes that she had too much on her plate and was reassigning the reading coaches under Schaaf's supervision.

33.    In February 2015, Hayes again went to McCool to ask if there was anything she could do to force Schaaf to work with her on her assigned tasks.

34.    McCool advised Hayes that "things were in the works".

35.    On or about June 4, 2015, Hayes again went to speak to McCool to complain that Schaaf still refused to respond to her emails or requests to meet to complete her assigned duties.

36.    Hayes met with McCool monthly to discuss problems she was having with Schaaf.  After multiple requests for a resolution in writing and after attending group administrative meetings with a communication consultant

brought in to attempt to resolve the problems between Schaaf and Jones (in which Schaaf refused to participate), Hayes asked McCool if something could be done formally.

**Retaliation**

37.     On May 6, 2015, Hayes was called into a meeting with Estep and counsel for MCSD before a stenographer to discuss Hayes' possible misuse of a stipend and her literacy coaching program, among other issues.

38.     In June 2015, Hayes told McCool that she was once again lodging a formal complaint regarding the major problems she was experiencing with harassment, bias and sexism by Schaaf and MCSD; and that she believed it was illegal to be treated differently because of her gender, and under the MCSD policy rules and regulations, to be treated differently because of her sexual orientation.

39.     McCool advised she was leaving the MCSD and, further, that she would not file anything formal for Hayes, as she denied any discrimination was occurring.

40.     A few days later, Estep called Hayes into his office to tell her that he was no longer her supervisor and that he was making Schaaf her supervisor.

41.     Hayes broke down in tears and asked how he could do this after all the complaints she had lodged about Schaaf.  Hayes said she was extremely uncomfortable having Schaaf as her supervisor.

42.     When Hayes returned from a previously planned and approved vacation in July 2015, she was presented with an unfavorable performance review for 2014/2015 school year.  The review was delayed as it was actually due to be given to her in June 2015.  Hayes' prior performance reviews were all commendable.

43.     Estep told Hayes he wanted to leave MCSD and did not wish to stay any longer.  He was, in fact, interviewing for another position the day he handed Hayes the performance review.

44.     Hayes was shocked and traumatized by the treatment of change of supervisor to her harasser and a poor performance evaluation following her wish to formally lodge a complaint based on sex discrimination.

45.     Hayes was not physically able to come to work with Schaaf as her supervisor.  She used all of her sick and vacation leave to begin a leave of absence.

46.     In July 2105, Hayes sought psychological treatment to address the extreme stress she was experiencing at work.

47.    Hayes was under treatment for the psychological trauma she suffered from the behavior of Schaaf, and from Estep's and McCool's failure to address Schaaf's behavior and redress the wrong committed by him.

48.    Additionally, Estep's placement of Hayes under the direct supervision of Schaaf was a direct and intentional act of retaliation for her having complained of disparate treatment because of her sex.

49.    In August of 2015, counsel for MCSD called in Hayes, accompanied by counsel, Thomas Breth (hereinafter "Breth") at her request, for several hours of interrogation under oath as a purported investigation into alleged problems with her work performance and handling of Federal programs.  Many of the same questions covered in the May 2015 meeting were repeated.

50.    On October 6, 2015, after two months had passed since the August 3, 2015 interrogation of Hayes by Breth, with still no reply or follow-up, Hayes' legal counsel corresponded with Breth to inquire as to the status of the "investigation". Further, Haye's counsel reported that she and Hayes were aware Schaaf was speaking negatively in the community about Hayes.  Haye's counsel requested discussion of a resolution to the matter.

51.    MCSD's legal counsel responded on November 4, 2015 that MCSD wished to schedule a third review with Hayes of her job performance alleging newly discovered, but unspecified, issues had come to light.

52.    On November 4, 2015, Hayes' counsel responded that she would attend as a surrogate for Hayes but that Hayes could not be subjected to further interrogation in light of her emotionally compromised mental health.  Counsel offered three dates when she was available.

53.    On November 10, 2015, MCSD's counsel replied that they would delay the meeting until Hayes was medically cleared to attend.

54.    Hayes provided a detailed report from her licensed psychologist explaining her condition and why she was not cleared to return to work.

55.    On December 17, 2105, Estep notified Hayes that her paid sick and vacation leave would expire on December 30, 2015.

56.    In December 2015, Hayes' counsel initiated a request for application for a medical sabbatical which was ultimately approved in February 2016 retroactive to January 2016.

57.    On December 2, 2015, the PHRC docketed and cross-filed with the EEOC Hayes' charge of sex discrimination and retaliation for having supported her colleague, Jones' sex discrimination and harassment complaint.  Hayes had

initiated the charge with the PHRC several months prior to the docketing of the charge.

58.   The PHRC served Hayes' charge on January 27, 2016.

59.   In February 2016, Hayes learned from a colleague that all of the contents of her office, including her personal effects, had been boxed and placed outside in the hall suggesting she had been terminated from employment while, in fact, she was on a medical sabbatical.

60.   On February 22, 2016, Hayes' counsel wrote to MCSD counsel complaining regarding the handling of Hayes' office materials including confidential files and personal effects to which MCSD did not respond.

61.   In May 2016, by letter, Estep advised Hayes that before the end of her sabbatical that she would be scheduled for a Loudermill hearing to review allegation once again (for the fourth time) that could lead to her termination.

62.   Hayes' therapist, Dr. Baughman advised against Hayes' return to work at MCSD after Estep's letter re-inflicted the trauma experienced by Hayes during the August 2015 interrogation by MCSD's counsel and reinjured her psychologically.

63.   Having been effectively constructively discharged, Hayes tendered her resignation effective June 2016, based on the fact she could not mentally or

physically return to MCSD due to the treatment she had experienced for over two years, despite her constant attempts with McCool and Estep to address the manner in which she was treated with McCool and Estep.

## COUNT I

## PLAINTIFF'S CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. Sec. 2000, et. seq.

### Sex Discrimination

64.    Hayes incorporates by reference the preceding paragraphs of this Complaint.

65.    Title VII of the Civil Rights Act of 1964 prohibits discrimination against employees based on sex.

66.    MCSD subjected Hayes to disparate treatment by allowing a colleague, Director Schaaf to belittle her in front of the principals with whom she worked; to subject her to a sexually hostile work environment which made her uncomfortable, to speak in a vulgar and demeaning manner to Hayes and her sister female Directors.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with

interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

### Retaliation

67.    Hayes incorporates by reference the preceding paragraphs of this Complaint.

68.    Title VII of the Civil Rights Act of 1964 prohibits retaliation against employees for opposing unlawful discrimination or participating in a protect activity.

69.    After Hayes cooperated with MCSD's investigation as a witness for Director Jones who had filed a charge of sex discrimination with the PHRC and EEOC, MCSD began to subject Hayes to harassing conditions of employment such as reassigning her duties and questioning her performance.

70.    After Hayes began lodging complaints with McCool and Estep beginning in the Spring of 2014 regarding her own disparate treatment inflicted upon her by Schaaf, a retaliatory investigation into alleged performance issues began with an investigation of Hayes conducted by MCSD counsel Breth in May 2015, again in August 2015 and then requested an investigation again in

November 2015. Hayes had begun treatment in July 2015 for extreme stress and trauma caused by conditions of employment.

71.    MCSD presented no evidence or finding supporting any of the allegations of Hayes' failure to perform duties appropriately after Hayes repeatedly clarified and offered clear explanations to rebut the allegations.

72.    After using all paid sick and vacation leave and applying for an approved medical sabbatical, Hayes was still unable to return to work or even walk into the administrative building at MCSD due to repeated psychological re-injury by MCSD, e.g.  the boxing of all her office equipment, files including confidential information, and her personal effects and placing them in the hall after her sabbatical was approved; and demanding a *Loudermill* hearing on the same allegations which had been investigated three times previously while Hayes was on sabbatical.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT III

### Constructive Discharge

### PLAINTIFF'S CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. Sec. 2000, et. seq.

73.    Hayes incorporates by reference the preceding paragraphs of this Complaint.

74.    Title VII of the Civil Rights Act of 1964 prohibits retaliation against employees for opposing unlawful discrimination or participating in a protect activity.

75.    MCSD committed a continued course of action in direct retaliation for Hayes support of her colleague Jones' complaint of sex discrimination with the intent of punishing and harming Hayes' ability to perform her duties and thereby destroy her reputation and career.

76.    MCSD's continued course of retaliation included eliminating some assigned duties and questioning repeatedly her performance resulting in serial investigations into unsubstantiated allegation which directly injured Hayes psychologically to the point she was unable to perform her duties and unable to even walk into the MCSD administrative offices without further psychological injury.

77.     MCSD committed a continued course of action in direct retaliation for Hayes lodging complaints to the Human Resource Director and to Superintendent Estep.  McCool eventually left her position.  Estep retaliated maliciously with repeated, unsubstantiated accusation against Hayes of poor performance.

78.     Estep maliciously and callously removed Hayes from his supervision and placed her under the specific person whom she had accused of discriminating against her and creating a sexually harassing atmosphere for her and other female colleagues.  Hayes had repeatedly asked McCool and Estep for relief from Schaaf's behavior before Estep reassigned Schaaf to be her supervisor.

79.     The retaliation described in the foregoing paragraphs of this Complaint were the direct causation of Hayes' severe emotional stress, trauma and anxiety which rendered her unable to return to her employment, causing her to utilize all forms of paid leave and a medical sabbatical at half salary until June 2016 when Dr. Baughman diagnosed Hayes as unable to return without further severe damage to her mental health.

80.     MCSD constructively discharged Hayes in June 2016 at the end of the school year when her medical sabbatical expired.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT IV

## Sex Discrimination

## PLAINTIFF'S CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT, 42 P.S.

## Sec. 951. et. seq.

81.    Hayes incorporates by reference the preceding paragraphs of this Complaint.

82.    The PHRA prohibits sex discrimination in employment.

83.    MCSD subjected Hayes to disparate treatment by allowing a colleague, Director Schaaf to belittle her in front of the principals with whom she worked; to subject her to a sexually hostile work environment which made her uncomfortable, to speak in a vulgar and demeaning manner to Hayes and her sister female Directors.

84.    MCSD subjected Hayes to disparate treatment based on her sex by refusing to seriously investigate or discipline Schaaf despite repeated complaints

by Hayes as to how Schaaf was impeding her ability to perform her duties of employment.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT V

### Retaliation

### PLAINTIFF'S CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT, 42 P.S.

### Sec. 951. et. seq.

85.     Hayes incorporates by reference the preceding paragraphs of this Complaint.

86.     The PHRA prohibits retaliation against an employee who opposes unlawful, discriminatory activity on behalf of themselves or on behalf of another.

87.     After Hayes cooperated with MCSD's investigation as a witness for Director Jones who had filed a charge of sex discrimination with the PHRC and EEOC, MCSD began to subject Hayes to harassing conditions of employment such as reassigning her duties and questioning her performance.

88.    After Hayes began lodging complaints with McCool and Estep beginning in the Spring of 2014 regarding her own disparate treatment inflicted upon her by Schaaf, a retaliatory investigation into alleged performance issues began with an investigation of Hayes conducted by MCSD counsel Breth in May 2015, again in August 2015 and then requested an investigation again in November 2015. Hayes had begun treatment in July 2015 for extreme stress and trauma caused by conditions of employment.

89.    MCSD presented no evidence or finding supporting any of the allegations of Hayes' failure to perform duties appropriately after Hayes repeatedly clarified and offered clear explanations to rebut the allegations.

90.    After using all paid sick and vacation leave and applying for an approved medical sabbatical, Hayes was still unable to return to work or even walk into the administrative building at MCSD due to repeated psychological re-injury by MCSD, e.g. the boxing of all her office equipment, files including confidential information, and her personal effects and placing them in the hall after her sabbatical was approved; and demanding a *Loudermill* hearing on the same allegations which had been investigated three times previously while Hayes was on sabbatical.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT VI

## Constructive Discharge

## PLAINTIFF'S CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT, 42 P.S.

## Sec. 951. et. seq.

91.     Hayes incorporates by reference the preceding paragraphs of this Complaint.

92.     Title VII of the Civil Rights Act of 1964 prohibits retaliation against employees for opposing unlawful discrimination or participating in a protect activity.

93.     MCSD committed a continued course of action in direct retaliation for Hayes support of her colleague Jones' complaint of sex discrimination with the intent of punishing and harming Hayes' ability to perform her duties and thereby destroy her reputation and career.

94.    MCSD's continue course of retaliation included eliminating some assigned duties and questioning repeatedly her performance resulting in serial investigations into unsubstantiated allegation which directly injured Hayes psychologically to the point she was unable to perform her duties and unable to even walk into the MCSD administrative offices without further psychological injury.

95.    MCSD committed a continued course of action in direct retaliation for Hayes lodging complaints to the Human Resource Director and to Superintendent Estep.  McCool eventually left her position.  Estep retaliated maliciously with repeated, unsubstantiated accusation against Hayes of poor performance.

96.    Estep maliciously and callously removed Hayes from his supervision and placed her under the specific person whom she had accused of discriminating against her and creating a sexually harassing atmosphere for her and other female colleagues.  Hayes had repeatedly asked McCool and Estep for relief from Schaaf's behavior before Estep reassigned Schaaf to be her supervisor.

97.    The retaliation described in the foregoing paragraphs of this Complaint were the direct causation of Hayes' severe emotional stress, trauma and anxiety which rendered her unable to return to her employment, causing her

to utilize all forms of paid leave and a medical sabbatical at half salary until June 2016 when Dr. Baughman diagnosed Hayes as unable to return without further severe damage to her mental health.

98.     MCSD constructively discharged Hayes in June 2016 at the end of the school year when her medical sabbatical expired.

WHEREFORE, Plaintiff, Dawn Hayes respectfully requests judgment in her favor and against Defendant, Mifflin County School District, for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all counts complained of herein for which she is entitled to a jury trial.

Respectfully submitted,

Lori K. Serratelli, Esquire,  No. 27426
Schiffman, Sheridan & Brown, PC
2080 Linglestown Road, Suite 201
Harrisburg, PA  17110
(717) 540-9170  (717) 540-5481 fax
lserratelli@ssbc-law.com